# Exhibit B

ELECTRONICALLY FILED
2019 Jan 21 12:11 PM
CLERK OF COURT

**IN CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

| | | |
|---|---|---|
| DAVID BISHOP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LG ELECTRONICS USA, INC., | ) | |
| | ) | |
| **Serve Registered Agent at:** | ) | |
| **Corporation Service Co.** | ) | |
| **2908 Poston Avenue** | ) | |
| **Nashville, TN 37203-1312,** | ) | |
| | ) | |
| VGOD, INC., | ) | |
| | ) | Case No. CT-004748-18 |
| **Serve Registered Agent at:** | ) | |
| **Waleed Aloteibi** | ) | |
| **1506 West 228th Street** | ) | |
| **Torrance, CA 90501** | ) | |
| | ) | |
| and | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| NEW AGE INVESTMENTS OF | ) | |
| CORDOVA LLC d/b/a CREATE A | ) | |
| CIG CORDOVA | ) | |
| | ) | |
| **Serve Registered Agent at:** | ) | |
| **Jordan Nie** | ) | |
| **465 N. Germantown** | ) | |
| **Parkway, Ste. 108** | ) | |
| **Cordova, TN 38018** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff David Bishop, by and through his undersigned counsel, pursuant

to Tenn. R. Civ. P. 15.01, and for his First Amended Complaint against Defendants LG Electronics

USA, Inc., VGOD, Inc., and New Age Investments of Cordova, LLC d/b/a Create a Cig Cordova,

1

states and alleges to the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff David Bishop is, and was at all times relevant, a natural person who lives in Cordova, Tennessee and is therefore a resident and citizen of Shelby County, Tennessee.

2.      On May 31, 2018, Plaintiff sustained severe injuries to his face, lips and mouth when a "VGOD Pro Mech 2" Electronic Nicotine Delivery System ("ENDS" – also commonly referred to and hereinafter referred to as an "E-Cigarette") powered by two LG 18650 3,000 mAh 3.7 V batteries exploded in close proximity to his face.

3.      Upon information and belief, a South Korean Company by the name of LG Chem, Ltd. is the entity that manufactured the subject LG battery that exploded and thereby damaged Plaintiff David Bishop.

4.      LG Chem, Ltd. is not subject to the jurisdiction of this Court in that LG Chem Ltd. is not subject to service in Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute.

5.      Defendant LG Electronics USA, Inc. (hereinafter "Defendant LG") is, and was at all times relevant, an incorporated entity formed in Delaware, registered to do business in Tennessee, and with its principal place of business in New Jersey.  Defendant LG may be served with process through its registered agent, Corporation Service Co., at the following address: 2908 Poston Avenue Nashville, TN 37203-1312.

6.      Defendant LG is, and was at all times relevant, in the business of designing, testing, manufacturing, advertising, distributing and/or selling batteries, including the LG 18650 battery, for use in electronic cigarettes throughout the world, including Tennessee.

7.      Defendant LG, through its actions and those of any affiliated/parent/subsidiary

2

companies and agents, does and did at all times relevant conduct substantial business in Tennessee by purposefully causing its products, including the LG 18650 battery, to be marketed, distributed, sold and used within Tennessee.

8.    Defendant LG does, and did at all times relevant, derive significant revenue from its activities and the sale/use of its products in Tennessee.

9.    Defendant LG has additionally caused Plaintiff, a citizen and resident of Tennessee, to suffer severe and permanent injuries as the result of at least one tortious act or omission.

10.    Thus, through its actions, Defendant LG does or should reasonably anticipate being haled into a Tennessee court and has thereby consented specifically to the jurisdiction of this Court. Defendant LG is thus subject to personal jurisdiction in this Court pursuant to T.C.A. §§ 20-2-214, 20-2-223 and 20-2-225.

11.    Defendant VGOD, Inc. is, and was at all times relevant, an incorporated entity formed in California, with its principal place of business in California.  Defendant VGOD, Inc. may be served with process through its registered agent, Waleed Aloteibi, at the following address: 1506 West 228th Street, Torrance, CA 90501.

12.    Defendant VGOD, Inc. is, and was at all times relevant, a specialty electronic cigarette manufacturer in the business of advertising, distributing and/or selling electronic cigarettes throughout the world, including Tennessee.

13.    According to VGOD Inc.'s website's "Career Opportunities" page, VGOD, Inc. is "one of the fastest growing e-commerce companies in the industry" and "the most recognized vape brand in the world . . . ."

14.    According to VGOD Inc.'s website's "Devices" page, VGOD's "Pro Mech 2" Device is the "World's #1 Mechanical Mod . . . ."

3

15.     According to VGOD, Inc.'s website's "Affiliate Program" page, VGOD, Inc. solicits affiliate sellers and/or advertisers who "earn commission when [they] promote eligible VGOD products" including "Mech Mods."

16.     Defendant   VGOD,   Inc.,   through   its   actions   and   those   of   any affiliated/parent/subsidiary companies and agents, does and did at all times relevant conduct substantial business in Tennessee by purposefully causing its products, including the "Mech Mods," to be marketed, distributed, sold and used within Tennessee.

17.     Defendant VGOD, Inc. does, and did at all times relevant, derive significant revenue from its activities and the sale/use of its products in Tennessee.

18.     Defendant VGOD, Inc. has additionally caused Plaintiff, a citizen and resident of Tennessee, to suffer severe and permanent injuries as the result of at least one tortious act or omission.

19.     Thus, through its actions, Defendant VGOD, Inc. does or should reasonably anticipate being haled into a Tennessee court and has thereby consented specifically to the jurisdiction of this Court. Defendant VGOD, Inc. is thus subject to personal jurisdiction in this Court pursuant to T.C.A. §§ 20-2-214, 20-2-223 and 20-2-225.

20.     Defendant New Age Investments of Cordova, LLC d/b/a Create a Cig Cordova (hereinafter "Create A Cig Cordova") is, and was at all times relevant, a Limited Liability Company formed in Tennessee, with its principal place of business at 465 N Germantown Parkway, Suite 108 in Cordova, TN 38018. Defendant Create A Cig Cordova thus does business in Tennessee under the name Create a Cig Cordova (among other names). Defendant Create a Cig Cordova may be served with process through its registered agent, Jordan Nie, at the following address: 465 N. Germantown Parkway, Ste. 108, Cordova, Tennessee 38018.

4

21.     Upon information and belief, Defendant Create A Cig Cordova has one member who is domiciled in Austin, TX, making Defendant Create A Cig a citizen of the State of Texas.

22.     Defendant Create A Cig Cordova is, and was at all times relevant, a specialty electronic cigarette shop in the business of advertising, distributing and/or selling electronic cigarettes throughout various states, including Tennessee.

23.     Defendant Create A Cig Cordova, through its actions and those of any affiliated/parent/subsidiary companies and agents, does and did at all times relevant, conduct substantial business in Tennessee by purposefully causing its products, including the "Mech Mods," to be marketed, distributed, sold and used within Tennessee.

24.     Defendant Create A Cig Cordova does, and did at all times relevant, derive significant revenue from its activities and the sale/use of its products in Tennessee.

25.     Defendant Create A Cig Cordova has additionally caused Plaintiff, a citizen and resident of Tennessee, to suffer severe and permanent injuries as the result of at least one tortious act or omission.

26.     Thus, through its actions, Defendant Create A Cig Cordova does or should reasonably anticipate being haled into a Tennessee court and has thereby consented specifically to the jurisdiction of this Court.   Defendant Create A Cig Cordova is thus subject to personal jurisdiction in this Court pursuant to T.C.A. §§ 20-2-214, 20-2-223 and 20-2-225.

27.     Pursuant to T.C.A. § 20-4-106, venue is proper in Shelby County, Tennessee in that Plaintiff was first injured in Shelby County, Tennessee as a result of Defendants' negligent conduct and as a result of the defective and unreasonably dangerous nature of the products at issue.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

28.     E-cigarettes, which were patented in 2003 and which generate billions of dollars of

sales worldwide as of 2017, differ from traditional cigarettes in at least one critical way: the e-cigarette is battery operated and uses a heating element to produce inhalable vapor, whereas a traditional cigarette has no electronic component. E-cigarettes thereby pose an additional danger in that the lithium battery powering device can and has caused numerous explosions/fires resulting in serious injuries to users.

29.     The lithium batteries that are commonly used in e-cigarettes are subject to risk of an event known as thermal runaway, whereby the internal battery temperature can increase to a point of causing the battery to ignite and/or explode, due to defective design and/or manufacture, including the use of low-quality materials.

30.     According to NASA in 2005, "lithium-ion batteries are used widely in portable electronic equipment [but with] the increased power demands from portable electronic equipment, the batteries have increased in energy and power with almost no changes in dimension, consequently increasing the hazards associated with high-energy systems."

31.     According to the U.S. Fire Administration's 2017 Report on "Electronic Cigarette Fires and Explosions in the United States 2009-2016," the "incidents involving severe injuries occurred while the e-cigarette device was in the victim's mouth, in very close proximity to their face, or in a pocket. This inherent intimacy with the device is what makes the e-cigarette hazard unique among consumer products. No other consumer product that is typically used so close to the human body contains the lithium-ion battery that is the root cause of the incidents."

32.     According to that same U.S. Fire Administration Report, "[a]ll of the electrolytes currently used in Li-ion batteries are either flammable or combustible liquids. It is this flammable electrolyte that causes the fire and explosion when the Li-ion battery overheats."

33.     According to that same U.S. Fire Administration Report, "[c]ell phones, tablets,

6

and other devices use pouch-type Li-ion batteries that are flat, rather than cylindrical in shape, and are encased in a sealed flexible plastic pouch or rigid plastic case instead of a metal can. These pouch-type batteries will not build up much pressure when they overheat and do not explode violently when they fail."

34.     According to that same U.S. Fire Administration Report, "the cylindrical Li-ion batteries used in laptop computers and portable tools are contained in rigid plastic cases that are generally strong enough to prevent the failing battery from rocketing away."

35.     According to that same U.S. Fire Administration Report, "E-cigarettes are different from other electronic consumer devices because the battery is installed in a cylindrical device (the e-cigarette) that has its weakest (structural) point at the ends. When the battery seal (at the end of the battery) ruptures, the pressure within the e-cigarette cylinder builds quickly until it ruptures, usually at the end. As a result of the battery and container failure, one or the other, or both, can be propelled across the room like a bullet or small rocket."

36.     That same U.S. Fire Administration Report concluded that "Lithium-ion batteries should not be used in e-cigarettes. While the number of batteries that explode and catch fire is statistically small, the catastrophic nature of the injuries that can occur warrants the use of another battery technology for e-cigarettes."

37.     The e-cigarette industry carries mass appeal to manufacturers, distributors and sellers because the cost of production is low and the return on profits is high, due in large part to the lack of regulatory oversight at the federal, state and local levels.

38.     Only a few federal regulations have been promulgated or proposed regarding the use of e-cigarettes. None of these regulations however deal with the safety of the *devices*; instead, they deal with the safety of the substances ingested.

39.     Many e-cigarette products are shipped from overseas and placed into the stream of commerce without any knowledge as to what is in them, how they were made, how they can be expected to perform, and/or whether they are safe for consumers.

40.     In 2009, the United States Food and Drug Administration ("FDA") first attempted to regulate e-cigarettes under the Food, Drug, and Cosmetic Act ("FDCA"). E-cigarette manufacturers successfully sued the FDA in *Sottera Inc. v. Food & Drug Administrations*, 627 F.3d 891 (D.C. Cir. 2010), arguing that e-cigarettes were not subject to the FDCA since e-cigarettes were not medical devices.

41.     On April 25, 2014, the FDA released a proposed regulation that would extend the statutory definition of "tobacco product" to include e-cigarettes. That rule became effective August 8, 2016; however, the regulation only concerns the tobacco aspect of e-cigarettes, and still leaves completely unfettered the manufacturing and quality control aspects of the devices themselves.

42.     According to a report released by the U.S. Fire Administration in 2017, between 2009 and 2016, there were 195 e-cigarette and fire explosion instances reported to the U.S. Fire Administration, and likely many others that were not reported.

43.     No later than October of 2014, all Defendants received notice of concern about lithium ion batteries similar to the subject battery herein, not only from consumers but also from the Federal Emergency Management Agency (FEMA), the United States Fire Administration (USFA), the Federal Aviation Administration (FAA), and from Underwriters Laboratories (UL) regarding the propensity of such batteries to spontaneously and without warning overheat, catch fire and continue burning during normal and foreseeable operating conditions, including being used in conjunction with an e-cigarette.

8

44.     Following Defendant LG's first sale of lithium ion batteries similar to the LG 18650 battery, Defendant LG received notice that lithium ion batteries were causing injuries to persons and property after spontaneously and without warning overheating, catching fire and burning. Said notices continued to accumulate over time such that Defendant LG did know, or should have known, of the dangerous propensity posed by the LG 18650 battery prior to the time of its sale to Plaintiff.

45.     Following Defendant VGOD, Inc.'s first sale of an e-cigarette similar to the subject e-cigarette herein, VGOD, Inc. received notice that lithium ion batteries similar to the subject battery, when used in conjunction with e-cigarettes like the subject e-cigarette herein, were causing injuries to persons and property after spontaneously and without warning overheating, catching fire and burning. Said notices continued to accumulate over time such that VGOD, Inc. did know, or should have known, of the dangerous propensity posed by the subject battery and the subject e-cigarette at the time of the sale of the e-cigarette or, in any event, prior to the subject incident.

46.     Following Defendant Create A Cig Cordova's first sales of both lithium ion batteries similar to the subject battery herein and e-cigarettes similar to the subject e-cigarette herein, Defendant Create A Cig Cordova received notice that lithium ion batteries similar to the subject battery, when used in conjunction with e-cigarettes like the subject e-cigarette herein, were causing injuries to persons and property after spontaneously and without warning overheating, catching fire and burning. Said notices continued to accumulate over time such that Defendant Create A Cig Cordova did know, or should have known, of the dangerous propensity posed by both the subject battery and the subject e-cigarette at the time of the sale of the subject e-cigarette and the subject battery or, in any event, prior to the subject incident.

47.     On or about April 24, 2018, Plaintiff David Bishop purchased a "VGOD Pro Mech

2" Electronic Nicotine Delivery System (hereinafter referred to as the "Subject E-Cigarette") from one of Create A Cig Cordova's Memphis, Tennessee locations.

48.   Create A Cig Cordova represented and warranted that the Subject E-Cigarette was brand new and had never been used prior.

49.   One month later, on or about May 23, 2018, Mr. Bishop purchased two LG 18650 3,000 mAh 3.7 V batteries from the same Create a Cig Cordova location in Memphis in order to use them with the Subject E-Cigarette.

50.   In selling the two LG 18650 3,000 mAh 3.7 V batteries to Mr. Bishop, the employee/agent of Create a Cig Cordova, acting within the course and scope of employment for Create a Cig Cordova, opened a new bulk package of LG 18650 3,000 mAh 3.7 V batteries and sold Mr. Bishop two such batteries without any writings, instructions or warnings from their manufacturer or distributor (or otherwise), and further failed to provide any additional writings, instructions or warnings.

51.   Defendant Create A Cig Cordova exercised substantial control over the packaging and labeling of the LG 18650 3,000 mAh 3.7 V batteries, by failing to provide to Mr. Bishop any warnings that may have been on the bulk packaging or that may have been otherwise available to Defendant Create A Cig Cordova.

52.   Approximately one week later, on or about the morning of May 31, 2018, at Mr. Bishop's home located in Shelby County, Tennessee, Mr. Bishop charged one of the LG 18650 3,000 mAh 3.7 V batteries (hereinafter referred to as the "Subject Battery"), placed the Subject Battery in the Subject E-Cigarette, and attempted to use the Subject E-Cigarette before work.

53.   Up until this point in time, Mr. Bishop had not removed the Subject E-Cigarette from the package, let alone used it, nor had he used the Subject Battery.

10

54.     As a specialty e-cigarette store, Defendant Create A Cig Cordova knew, or should have known, about the hazardous dangers associated with malfunctions of lithium batteries being used in conjunction with e-cigarettes in light of the prevalence of reported battery explosions in the context of vaping and involving electronic cigarettes.

55.     The Subject E-Cigarette and the Subject Battery are both "products" within the meaning of TCA §29-28-1-02(5) and Mr. Bishop, at all times, used these products in a reasonably foreseeable manner and for an intended purpose.

56.     Immediately upon Mr. Bishop's placement of the Subject E-Cigarette to his lips and his pressing of the button activating the heating element that transforms the liquid into a mist (known as the "atomizer"), the Subject E-Cigarette and/or the Subject Battery malfunctioned by violently, unexpectedly and calamitously exploding, propelling component parts thereof, including battery acid, into Mr. Bishop's face, lips and mouth (hereinafter "The Explosion").

57.     Part of the Subject E-Cigarette was propelled upwards with so much force and heat that it struck the ceiling of Mr. Bishop's home, leaving charred burn marks on the ceiling and wall before eventually coming to rest on top of one of his cabinets.

58.     Before the piece of the Subject E-Cigarette was propelled upwards with said force and heat, however, it, along with other component parts of the Subject E-Cigarette and Subject Battery, including battery acid, came into violent contact with Mr. Bishop's face, lips and mouth.

59.     The upward force and heat of said piece of the Subject E-Cigarette coming into contact with Mr. Bishop's face resulted in severe burns to Mr. Bishop's face and in a chunk of Mr. Bishop's flesh, extending from his upper lip through his left lower cheek, being torn out.

60.     As a result of The Explosion, Mr. Bishop required 65 stitches in a circular pattern to his left upper lip area through to his left lower cheek.

61.     As a result of The Explosion, Mr. Bishop also suffered from severe heat and/or chemical burns to his mouth, face, left hand and tongue.

62.     As a result of The Explosion, Mr. Bishop also suffered from several fractured teeth.

63.     As a result of the foregoing physical injuries, Mr. Bishop was forced to miss considerable time off from work, thereby incurring lost wages.

64.     As a result of the The Explosion, Mr. Bishop has suffered severe, permanent, disfiguring and disabling physical injuries, past and future medical costs, wage loss and impairment, conscious physical pain, emotional suffering, and mental and psychological trauma.

### COUNT I – STRICT LIABILITY
**Defendant LG**
**The Subject Battery**

65.     Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

66.     Upon information and belief, LG Chem, Ltd. is the manufacturer of the Subject Battery.

67.     LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of T.C.A. § 29-28-106 do not prevent a product liability action from being commenced against Defendant LG, even to the extent Defendant LG did not play any role in the design or manufacture of the Subject Battery.

68.     Additionally, Defendant LG is familiar with LG batteries such that it cannot be said that Defendant LG is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective

condition; as such, the provisions of T.C.A. § 29-28-106 do not prevent a products liability action as to the Subject Battery from being commenced against Defendant LG.

69.     In the ordinary course of business, the Subject Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce such that it reached the State of Tennessee by the acts of Defendant LG.

70.     At the time of The Explosion, the Subject Battery was used in a manner reasonably anticipated by Defendant LG.

71.     At the time of The Explosion, the Subject Battery was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant LG.

72.     At the time of The Explosion, the Subject Battery was in substantially the same condition as when it left the control of Defendant LG, except for reasonably anticipated wear and tear.

73.     The Subject Battery, when used in the manner recommended, intended and/or reasonably foreseeable to Defendant LG, was "defective" and "unreasonably dangerous" – as those terms are defined by TCA §§ 29-28-201(2) and (8) – in one or more of the following respects:

    a)  The Subject Battery was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Subject Battery had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

    b)  The Subject Battery was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject Battery (especially in combination with an E-Cigarette); and,

    c)  The Subject Battery was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers,

13

placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject Battery (especially in combination with an E-Cigarette).

74.    Defendant LG knew that the Subject Battery would be used without inspection for defective or unreasonably dangerous conditions and represented that the Subject Battery could be safely used and would be fit for the ordinary purposes for which it was intended.

75.    Defendant LG knew that the end consumers of the Subject Battery would not and could not properly inspect the Subject Battery for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

76.    On the date of The Explosion, the Subject Battery was within its "anticipated life" as defined by TCA § 29-28-102(1).

77.    Technologically and commercially feasible safer alternative designs and methods of supplying battery-powered electricity existed for the Subject Battery, which would have eliminated its unreasonably dangerous characteristics and propensities without seriously impairing its usefulness.

78.    The Subject Battery did not meet reasonable expectations of safety, failed to meet the "Consumer Expectation Test" as that term is understood under Tennessee law, and was not reasonably fit for the purposes for which it would foreseeably be used.

79.    A reasonably prudent manufacturer or seller would not have put the Subject Battery on the market due to its defective, unsafe and unreasonably dangerous condition.

80.    Had the Subject Battery not possessed the defects and unreasonably dangerous characteristics and propensities described above, the likelihood of Mr. Bishop's injuries, and the damages resulting therefrom, would have either been eliminated or the injuries and damages would have been less numerous, less likely, or less severe.

81.     As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Battery, Mr. Bishop suffered severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

82.     Defendant LG's conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant LG for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT II – NEGLIGENCE
**Defendant LG**
**The Subject Battery**

83.     Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

84.     Upon information and belief, LG Chem, Ltd. is the manufacturer of the Subject Battery.

85.     LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of T.C.A. § 29-28-106 do not prevent a product liability action from being commenced against

15

Defendant LG, even to the extent Defendant LG did not play any role in the design or manufacture of the Subject Battery.

86.     Additionally, Defendant LG is familiar with LG batteries such that it cannot be said that Defendant LG is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of T.C.A. § 29-28-106 do not prevent a products liability action as to the Subject Battery from being commenced against Defendant LG.

87.     In the ordinary course of business, the Subject Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce such that it reached the State of Tennessee by the acts of Defendant LG.

88.     At the time of The Explosion, the Subject Battery was used in a manner reasonably anticipated by Defendant LG.

89.     At the time of The Explosion, the Subject Battery was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant LG.

90.     At the time of The Explosion, the Subject Battery was in substantially the same condition as when it left the control of Defendant LG, except for reasonably anticipated wear and tear.

91.     Defendant LG owed a duty to the general consuming public, including David Bishop, to design, manufacture, assemble, test, market, and/or distribute the Subject Battery such that it was reasonably safe for intended and/or foreseeable operation.

92.     Defendant LG knew that the Subject Battery would be used without inspection for defective or unreasonably dangerous conditions and represented that the Subject Battery could be

16

safely used and would be fit for the ordinary purposes for which it was intended.

93.     Defendant LG knew that the end consumers of the Subject Battery would not and could not properly inspect the Subject Battery for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

94.     At the time the Subject Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce, it was foreseeable to Defendant LG that it would be used along with tubular E-Cigarettes in intimate proximity to users' faces, lips, mouths, cheeks, eyes and heads.

95.     At the time the Subject Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce, it was foreseeable to Defendant LG that it had the propensity to spontaneously, and without warning, overheat, catch fire and continue burning under normal operating conditions.

96.     At the time the Subject Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce by Defendant LG, Defendant LG knew or should have known that consumers who used LG 18650 batteries to power tubular E-Cigarettes were subject to a heightened risk of injury or death.

97.     Notwithstanding the aforesaid duty, Defendant LG failed to exercise reasonable care and caution with respect to the Subject Battery, in one or more of the following ways:

   a) The Subject Battery was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Subject Battery had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

   b) The Subject Battery was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they

17

were placing themselves in by using the Subject Battery;

c) The Subject Battery was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject Battery; and,

d) In designing, manufacturing, selling and/or supplying the Subject Battery, when the Defendant LG knew of its propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions as well as the high probability that the Subject Battery would be used in E-Cigarettes and therefore in intimate proximity to users' faces, lips, mouths, cheeks, eyes and heads.

98.     As a direct and proximate result of the negligence of Defendant LG with respect to the Subject Battery, Mr. Bishop suffered severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

99.     Defendant LG's conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant LG for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Defendant LG
### The Subject Battery

100.    Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

101.    Upon information and belief, LG Chem, Ltd. is the manufacturer of the Subject Battery.

102.    LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of T.C.A. § 29-28-106 do not prevent a breach of warranty action as to the Subject Battery from being commenced against Defendant LG, even to the extent Defendant LG did not play any role in the design or manufacture the Subject Battery.

103.    Additionally, Defendant LG is familiar with LG batteries such that it cannot be said that Defendant LG is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of T.C.A. § 29-28-106 do not prevent a breach of warranty action as to the Subject Battery from being commenced against Defendant LG.

104.    The Subject Battery was a "good" within the meaning of the Uniform Commercial Code Article 2 and T.C.A. § 47-2-314.

105.    Defendant LG is, and was at all relevant times, a merchant who deals with goods similar or identical to the Subject Battery and who holds itself out as having knowledge and skill in the battery and/or electronics industry.

106.    Defendant LG designed, marketed and/or distributed the Subject Battery, which was sold to Create A Cig Cordova and then sold to Mr. Bishop.

19

107.    Defendant LG impliedly warranted that the Subject Battery was merchantable and fit for the ordinary purposes for which the Subject Battery would be used.

108.    Defendant LG's conduct as described herein constitutes breach of the implied warranty of merchantability in violation of T.C.A. § 47-2-314 since the Subject Battery designed, manufactured, and sold by Defendant LG was not merchantable at the time of sale due to Defendant LG's misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner.

109.    Defendant LG breached the warranty implied in the contract for the sale of the Subject Battery because the Subject Battery:

   a)  Did not pass without objection in the trade under the contract description;

   b)  Was not fit for the ordinary purposes for which it was to be used;

   c)  Was not adequately labeled; and,

   d)  Did not conform to the promises or affirmations of fact made by Defendant LG.

110.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant LG, the Subject Battery utilized by Plaintiff was not merchantable nor was it fit for the ordinary purposes for which such goods are used, which directly and proximately caused or contributed to cause Mr. Bishop to suffer severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

111.    Defendant LG's conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of

others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant LG for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

### COUNT IV – VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### Defendant LG
### The Subject Battery

112.    Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

113.    The provisions of T.C.A. § 29-28-106 do not apply to claims brought pursuant to TCA §§ 47-18-101, *et seq.*, more commonly known as the Tennessee Consumer Protection Act.

114.    Mr. Bishop is, and was at all times relevant, a "consumer" as defined by TCA § 47-18-103(2).

115.    The Subject Battery is, and was at all times relevant, a "good" as defined by TCA § 47-18-103(7).

116.    Defendant LG, in violation of TCA § 47-18-104(b)(7), unfairly and/or deceptively represented that the Subject Battery was of a particular standard, quality, or grade when it was not.

117.    Defendant LG failed, pursuant to TCA § 47-18-104(c)(5), to fairly and adequately disclose in its advertisements that the Subject Battery was defective for the purpose represented.

118.    Defendant LG falsely represented that the Subject Battery was a safer alternative to other powering systems, while failing to inform Plaintiff that the Subject Battery could explode

21

and cause significant personal injury, despite being used in a reasonable and foreseeable manner.

119.    The aforementioned acts, omissions, representations, and misrepresentations of Defendant LG were committed willfully, knowingly and/or intentionally in violation of TCA §§ 47-18-101, *et seq.*, more commonly known as the Tennessee Consumer Protection Act.

120.    As a direct and proximate result of the violations of the Tennessee Consumer Protection Act described herein by Defendant LG, Mr. Bishop was damaged in an amount to be proven at trial.

121.    Mr. Bishop is entitled to recover treble damages from Defendant LG pursuant to TCA § 47-18-109(a)(3).

122.    In addition to treble his damages, Mr. Bishop is entitled to recover attorney's fees from Defendant LG pursuant to TCA § 47-18-109(e)(1).

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant LG for a reasonable sum of three times Mr. Bishop's damages as will fairly and justly compensate him for his damages incurred, for his costs incurred herein, for a reasonable attorney's fee, and for such other and further relief as the Court may deem just and proper under the circumstances.

### COUNT V – STRICT LIABILITY
**Defendant VGOD, Inc.**
**The Subject E-Cigarette**

123.    Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

124.    In the ordinary course of business, the Subject E-Cigarette was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce such that it reached the State of Tennessee by the acts of Defendant VGOD, Inc.

22

125.    At the time of The Explosion, the Subject E-Cigarette was used in a manner reasonably anticipated by Defendant VGOD, Inc.

126.    At the time of The Explosion, the Subject E-Cigarette was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant VGOD, Inc.

127.    At the time of The Explosion, the Subject E-Cigarette was in substantially the same condition as when it left the control of Defendant VGOD, Inc., except for reasonably anticipated wear and tear.

128.    The Subject E-Cigarette, when used in the manner recommended, intended and/or reasonably foreseeable to Defendant VGOD, Inc., was "defective" and "unreasonably dangerous" – as those terms are defined by TCA §§ 29-28-201(2) and (8) – in one or more of the following ways:

a)  The Subject E-Cigarette, even though it was known that said device would be used in intimate proximity to users' faces, lips, mouths, cheeks, eyes, and heads, was designed and intended to be powered by a battery, such as the Subject Battery, that was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that such batteries had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

b)  The Subject E-Cigarette – even though it was known that said device would be used in intimate proximity to users' faces, lips, mouths, cheeks, eyes, and heads, and even though it was known and intended that it would be used in combination with an unsafe, unreasonably dangerous and defective battery such as the Subject Battery – was designed in a way that said batteries were to be housed in a cylindrical device with its weakest structural point at the ends such that when the battery seal ruptures, the pressure within the E-Cigarette cylinder builds quickly until it also ruptures, causing the battery and/or E-Cigarette container to be violently propelled like a bullet or small rocket;

c)  The Subject E-Cigarette was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils

23

they were placing themselves in by using the Subject E-Cigarette in conjunction with batteries like the Subject Battery; and,

d) The Subject E-Cigarette was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject E-Cigarette in conjunction with batteries like the Subject Battery.

129.   Defendant VGOD, Inc. knew that the Subject E-Cigarette would be used without inspection for defective or unreasonably dangerous conditions and represented that the Subject E-Cigarette could be safely used and would be fit for the ordinary purposes for which it was intended.

130.   Defendant VGOD, Inc. knew that the end consumers of the Subject E-Cigarette would not and could not properly inspect the Subject E-Cigarette for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

131.   On the date of The Explosion, the Subject E-Cigarette was within its "anticipated life" as defined by TCA § 29-28-102(1).

132.   Technologically and commercially feasible safer alternative designs and methods of vaporizing liquids existed for the Subject E-Cigarette, which would have eliminated its unreasonably dangerous characteristics and propensities without seriously impairing its usefulness.

133.   The Subject E-Cigarette did not meet reasonable expectations of safety, failed to meet the "Consumer Expectation Test" as that term is understood under Tennessee law, and was not reasonably fit for the purposes for which it would foreseeably be used.

134.   A reasonably prudent manufacturer or seller would not have put the Subject E-Cigarette on the market due to its defective, unsafe and unreasonably dangerous condition.

135.    Had the Subject E-Cigarette not possessed the defects and unreasonably dangerous characteristics and propensities described above, the likelihood of David Bishop's injuries, and the damages resulting therefrom, would have either been eliminated or the injuries and damages would have been less numerous, less likely, or less severe.

136.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject E-Cigarette, Mr. Bishop suffered severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

137.    Defendant VGOD, Inc.'s conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant VGOD, Inc. for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT VI – NEGLIGENCE
### Defendant VGOD, Inc.
### The Subject E-Cigarette

138.    Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

139.    In the ordinary course of business, the Subject E-Cigarette was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce such that it reached the State of Tennessee by the acts of Defendant VGOD, Inc.

140.    At the time of the The Explosion, the Subject E-Cigarette was used in a manner reasonably anticipated by Defendant VGOD, Inc.

141.    At the time of The Explosion, the Subject E-Cigarette was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant VGOD, Inc.

142.    At the time of The Explosion, the Subject E-Cigarette was in substantially the same condition as when it left the control of Defendant VGOD, Inc., except for reasonably anticipated wear and tear.

143.    Defendant VGOD, Inc. owed a duty to the general consuming public, including David Bishop, to design, manufacture, assemble, test, market, and/or distribute the Subject E-Cigarette such that it was reasonably safe for intended and/or foreseeable operation.

144.    Defendant VGOD, Inc. knew that the Subject E-Cigarette would be used without inspection for defective or unreasonably dangerous conditions and represented that the Subject E-Cigarette could be safely used and would be fit for the ordinary purposes for which it was intended.

145.    At the time the Subject E-Cigarette was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce, it was foreseeable to Defendant VGOD, Inc. that it would be used along with batteries such as the Subject Battery in intimate proximity to users' faces, lips, mouths, cheeks, eyes and heads.

146.    At the time the Subject E-Cigarette was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce, it was foreseeable to

26

Defendant VGOD, Inc. that it had the propensity to spontaneously and without warning overheat, catch fire, and continue burning under normal operating conditions.

147.    At the time the Subject E-Cigarette was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce by Defendant VGOD, Inc., Defendant VGOD, Inc. knew or should have known that consumers who used batteries like the Subject Battery to power tubular E-Cigarettes like the Subject E-Cigarette were subject to a heightened risk of injury or death.

148.    Notwithstanding the aforesaid duty, Defendant VGOD, Inc. failed to exercise reasonable care and caution with respect to the Subject E-Cigarette, in one or more of the following ways:

    a)  The Subject E-Cigarette, even though it was known that said device would be used in intimate proximity to users' faces, lips, mouths, cheeks, eyes, and heads, was designed and intended to be powered by a battery, such as the Subject Battery, that was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that such batteries had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

    b)  The Subject E-Cigarette – even though it was known that said device would be used in intimate proximity to users' faces, lips, mouths, cheeks, eyes, and heads, and even though it was known and intended that it would be used in combination with an unsafe, unreasonably dangerous and defective battery such as the Subject Battery – was designed in a way that said batteries were to be housed in a cylindrical device with its weakest structural point at the ends such that when the battery seal ruptures, the pressure within the E-Cigarette cylinder builds quickly until it also ruptures, causing the battery and/or E-Cigarette container to be violently propelled like a bullet or small rocket;

    c)  The Subject E-Cigarette was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject E-Cigarette in conjunction with batteries like the Subject Battery; and,

d) The Subject E-Cigarette was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject E-Cigarette in conjunction with batteries like the Subject Battery.

149.    As a direct and proximate result of the negligence of Defendant VGOD, Inc. with respect to the Subject E-Cigarette, Mr. Bishop suffered severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

150.    Defendant VGOD, Inc.'s conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant VGOD, Inc. for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT VII – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Defendant VGOD, Inc.
### The Subject E-Cigarette

151.    Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

152.    The Subject E-Cigarette was a "good" within the meaning of the Uniform Commercial Code Article 2 and T.C.A. § 47-2-314.

153.    Defendant VGOD, Inc. is, and was at all relevant times, a merchant who deals with goods similar or identical to the Subject E-Cigarette and holds itself out as having knowledge and skill in the Electronic Nicotine Delivery System and/or Vaping industries.

154.    Defendant VGOD, Inc. designed, marketed, and distributed the Subject E-Cigarette, which was sold to Create A Cig Cordova and was eventually sold to Mr. Bishop.

155.    Defendant VGOD, Inc. impliedly warranted that the Subject E-Cigarette was merchantable and fit for the ordinary purposes for which the Subject E-Cigarette would be used.

156.    Defendant VGOD, Inc.'s conduct as described herein constitutes breach of the implied warranty of merchantability in violation of T.C.A. § 47-2-314 since the Subject E-Cigarette designed, manufactured, and sold by Defendant VGOD, Inc. was not merchantable at the time of sale due to Defendant VGOD, Inc.'s misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner.

157.    Defendant VGOD, Inc. breached the warranty implied in the contract for the sale of the Subject E-Cigarette because the Subject E-Cigarette:

    a) Did not pass without objection in the trade under the contract description;

    b) Was not fit for the ordinary purposes for which it was to be used;

    c) Was not adequately labeled; and,

    d) Did not conform to the promises or affirmations of fact made by Defendant VGOD, Inc.

158.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant VGOD, Inc., the Subject E-Cigarette utilized by Plaintiff was not merchantable nor was it fit for the ordinary purposes for which such goods are used, which directly

and proximately caused or contributed to cause Mr. Bishop suffered severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

159.   Defendant VGOD, Inc.'s conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant VGOD, Inc. for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

### COUNT VIII – VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
#### Defendant VGOD, Inc.
#### The Subject E-Cigarette

160.   Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

161.   Mr. Bishop is, and was at all times relevant, a "consumer" as defined by TCA § 47-18-103(2).

162.   The Subject E-Cigarette is, and was at all times relevant, a "good" as defined by TCA § 47-18-103(7).

163.   Defendant VGOD, Inc., in violation of TCA § 47-18-104(b)(7), unfairly and/or deceptively represented that the Subject E-Cigarette was of a particular standard, quality, or grade

30

when it was not.

164.   Defendant VGOD, Inc. failed, pursuant to TCA § 47-18-104(c)(5), to fairly and adequately disclose in its advertisements that the Subject E-Cigarette was defective for the purpose(s) represented.

165.   Defendant VGOD, Inc. falsely represented that the Subject E-Cigarette was a safer alternative to traditional cigarettes, while failing to inform Plaintiff that the Subject E-Cigarette, when used in conjunction with batteries similar to the Subject Battery, could explode and cause significant personal injury despite being used in a reasonable and foreseeable manner.

166.   The aforementioned acts, omissions, representations, and misrepresentations of Defendant VGOD, Inc. were committed willfully, knowingly and/or intentionally in violation of TCA §§ 47-18-101, *et seq.*, more commonly known as the Tennessee Consumer Protection Act.

167.   As a direct and proximate result of the violations of the Tennessee Consumer Protection Act described herein by Defendant VGOD, Inc., Mr. Bishop was damaged in an amount to be proven at trial.

168.   Mr. Bishop is entitled to recover treble damages from Defendant VGOD, Inc. pursuant to TCA § 47-18-109(a)(3).

169.   In addition to treble his damages, Mr. Bishop is entitled to recover attorney's fees from Defendant VGOD, Inc. pursuant to TCA § 47-18-109(e)(1).

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant VGOD, Inc. for a reasonable sum of three times Mr. Bishop's damages as will fairly and justly compensate him for his damages incurred, for his costs incurred herein, for a reasonable attorney's fee, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT IX – STRICT LIABILITY
### Defendant Create A Cig Cordova
### The Subject Battery

170. Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

171. Upon information and belief, LG Chem, Ltd. is the manufacturer of the Subject Battery.

172. LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of T.C.A. § 29-28-106 do not prevent a product liability action from being commenced against Create A Cig Cordova, even though Create A Cig Cordova did not manufacture the Subject Battery.

173. Moreover, since Defendant Create A Cig Cordova acquires multiple batteries like the Subject Battery in one sealed package but sells individual batteries, like the Subject Battery, to consumers outside of that packaging, the provisions of T.C.A. § 29-28-106 do not prevent a product liability action from being commenced against Defendant Create A Cig Cordova.

174. Additionally, Defendant Create A Cig Cordova becomes familiar enough with its batteries such that it cannot be said that Defendant Create A Cig Cordova is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of T.C.A. § 29-28-106 do not prevent a products liability action as to the Subject Battery from being commenced against Defendant Create A Cig Cordova.

175. In the ordinary course of business, the Subject Battery was distributed or sold such that it reached the State of Tennessee, or reached the end-consumer in the State of Tennessee, by the acts of Defendant Create A Cig Cordova.

32

176. At the time of The Explosion, the Subject Battery was used in a manner reasonably anticipated by Defendant Create A Cig Cordova.

177. At the time of The Explosion, the Subject Battery was without substantial change in the condition in which it was inspected, distributed, or sold by Defendant Create A Cig Cordova.

178. At the time of The Explosion, the Subject Battery was in substantially the same condition as when it left the control of Defendant Create A Cig Cordova, except for reasonably anticipated wear and tear.

179. The Subject Battery, when used in the manner recommended, intended and/or reasonably foreseeable to Defendant Create A Cig Cordova, was "defective" and "unreasonably dangerous" – as those terms are defined by TCA §§ 29-28-201(2) and (8) – in one or more of the following ways:

    a) The Subject Battery was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Subject Battery had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

    b) The Subject Battery was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject Battery (especially in combination with an E-Cigarette); and,

    c) The Subject Battery was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject Battery (especially in combination with an E-Cigarette).

180. Defendant Create A Cig Cordova knew that the Subject Battery would be used without inspection for defective or unreasonably dangerous conditions and represented that the

33

Subject Battery could be safely used and would be fit for the ordinary purposes for which it was intended.

181.   Defendant Create A Cig Cordova knew that the end consumers of the Subject Battery would not and could not properly inspect the Subject Battery for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

182.   On the date of The Explosion, the Subject Battery was within its "anticipated life" as defined by TCA § 29-28-102(1).

183.   Technologically and commercially feasible safer alternatives existed for the Subject Battery, which could have been sold to Mr. Bishop instead, and which would not have had the unreasonably dangerous characteristics and propensities but would have had the same usefulness.

184.   The Subject Battery did not meet reasonable expectations of safety, failed to meet the "Consumer Expectation Test" as that term is understood under Tennessee law, and was not reasonably fit for the purposes for which it would foreseeably be used.

185.   A reasonably prudent manufacturer or seller would not have put the Subject Battery on the market due to its defective, unsafe, and unreasonably dangerous condition.

186.   Had the Subject Battery not possessed the defects and unreasonably dangerous characteristics/propensities described above, or had a safer alternative been sold to Plaintiff instead, the likelihood of Plaintiff's injuries, and the damages resulting therefrom, would have either been eliminated or the injuries and damages would have been less numerous, less likely, or less severe.

187.     As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Battery, Mr. Bishop suffered severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

188.     Defendant Create A Cig Cordova's conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant Create A Cig Cordova for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

### COUNT X – NEGLIGENCE
**Defendant Create A Cig Cordova**
**The Subject Battery**

189.     Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

190.     Upon information and belief, LG Chem, Ltd. is the manufacturer of the Subject Battery.

191.     LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of

T.C.A. § 29-28-106 do not prevent a product liability action from being commenced against Create A Cig Cordova, even though Create A Cig Cordova did not manufacture the Subject Battery.

192.    Moreover, since Defendant Create A Cig Cordova acquires multiple batteries like the Subject Battery in one sealed package but sells individual batteries, like the Subject Battery, to consumers outside of that packaging, the provisions of T.C.A. § 29-28-106 do not prevent a product liability action from being commenced against Defendant Create A Cig Cordova.

193.    Additionally, Defendant Create A Cig Cordova becomes familiar enough with its vaporizers and their compatible batteries such that it cannot be said that Defendant Create A Cig Cordova is afforded no reasonable opportunity to inspect the products in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of T.C.A. § 29-28-106 do not prevent a product liability action from being commenced against Defendant Create A Cig Cordova.

194.    In the ordinary course of business, the Subject Battery was distributed or sold such that it reached the State of Tennessee, or an end-consumer in Tennessee, by the acts of Defendant Create A Cig Cordova.

195.    At the time of the The Explosion, the Subject Battery was used in a manner reasonably anticipated by Defendant Create A Cig Cordova.

196.    At the time of The Explosion, the Subject Battery was without substantial change in the condition in which it was inspected, distributed, and/or sold by Defendant Create A Cig Cordova.

197.    At the time of The Explosion, the Subject Battery was in substantially the same condition as when it left the control of Defendant Create A Cig Cordova, except for reasonably anticipated wear and tear.

36

198.    Defendant Create A Cig Cordova owed a duty to the general consuming public, including David Bishop, to market, distribute, label, and/or warn of the Subject Battery such that it was reasonably safe for intended and/or foreseeable operation.

199.    Defendant Create A Cig Cordova knew that the Subject Battery would be used without inspection for defective or unreasonably dangerous conditions and represented that the Subject Battery could be safely used and would be fit for the ordinary purposes for which it was intended.

200.    At the time the Subject Battery was marketed, distributed, and/or sold, it was foreseeable to Defendant Create A Cig Cordova that it would be used along with tubular E-Cigarettes in intimate proximity to users' faces, lips, mouths, cheeks, eyes, and heads.

201.    At the time the Subject Battery was marketed, distributed, and/or sold, it was foreseeable to Defendant Create A Cig Cordova that it had the propensity to spontaneously and without warning overheat, catch fire, and continue burning under normal operating conditions.

202.    At the time the Subject Battery was marketed, distributed, and/or sold by Defendant Create A Cig Cordova, Defendant Create A Cig Cordova knew or should have known that consumers who used LG 18650 batteries to power tubular E-Cigarettes were subject to a heightened risk of injury or death.

203.    Notwithstanding the aforesaid duty, Defendant Create A Cig Cordova failed to exercise reasonable care and caution with respect to the Subject Battery, in one or more of the following ways:

a) Selling the Subject Battery even though it was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Subject Battery had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

b) Selling the Subject Battery even though it was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject Battery;

c) Selling the Subject Battery even though it was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Subject Battery; and,

d) Selling the Subject Battery for use with E-Cigarettes, such as the Subject E-Cigarette (and therefore in intimate proximity to users' faces, lips, mouths, cheeks, eyes, and heads), when Defendant Create A Cig Cordova knew of its propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions, and knew of the hazards associated with the Subject E-Cigarette given the Subject Battery's dangerous propensities.

204. As a direct and proximate result of the negligence of Defendant Create A Cig Cordova with respect to the Subject Battery, Mr. Bishop suffered severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

205. Defendant Create A Cig Cordova's conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant Create A Cig Cordova for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such sum as will serve to punish

Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT XI – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Defendant Create A Cig Cordova
### The Subject Battery and The Subject E-Cigarette

206.    Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

207.    Upon information and belief, LG Chem, Ltd. is the manufacturer of the Subject Battery.

208.    LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of T.C.A. § 29-28-106 do not prevent a breach of warranty action as to the Subject Battery from being commenced against Create A Cig Cordova, even though Create A Cig Cordova did not manufacture the Subject Battery.

209.    Moreover, since Defendant Create A Cig Cordova acquires multiple batteries like the Subject Battery in one sealed package but sells individual batteries, like the Subject Battery, to consumers outside of that packaging, the provisions of T.C.A. § 29-28-106 do not prevent a breach of warranty action as to the Subject Battery from being commenced against Defendant Create A Cig Cordova.

210.    Additionally, Defendant Create A Cig Cordova becomes familiar enough with its vaporizers and their compatible batteries such that it cannot be said that Defendant Create A Cig Cordova is afforded no reasonable opportunity to inspect the products in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition;

as such, the provisions of T.C.A. § 29-28-106 do not prevent a breach of warranty action as to both the Subject Battery and the Subject E-Cigarette from being commenced against Defendant Create A Cig Cordova.

211. Both the Subject Battery and the Subject E-Cigarette were "goods" within the meaning of the Uniform Commercial Code Article 2 and T.C.A. § 47-2-314.

212. Defendant Create A Cig Cordova is, and was at all relevant times, a merchant who deals with goods similar or identical to the Subject Battery and the Subject E-Cigarette and holds itself out as having knowledge and skill in the battery and/or vaping industries.

213. Defendant Create A Cig Cordova marketed, distributed and/or sold the Subject Battery and the Subject E-Cigarette to Mr. Bishop.

214. Defendant Create A Cig Cordova impliedly warranted that the Subject Battery and the Subject E-Cigarette were merchantable and fit for the ordinary purposes for which the Subject Battery and the Subject E-Cigarette would be used (including being used in conjunction with each other).

215. Defendant Create A Cig Cordova's conduct as described herein constitutes breach of the implied warranty of merchantability in violation of T.C.A. § 47-2-314 since the Subject Battery and the Subject E-Cigarette marketed, distributed, and/or sold by Defendant Create A Cig Cordova were not merchantable at the time of sale due to Defendant Create A Cig Cordova's misbranding, concealment, non-disclosure, and/or failure to warn of each product's dangerous propensities when used in an ordinary and foreseeable manner (including in conjunction with each other).

216. Defendant Create A Cig Cordova breached the warranty implied in the contracts for the sale of the Subject Battery and the Subject E-Cigarette because each:

  a. Did not pass without objection in the trade under the contract description;

  b. Was not fit for the ordinary purposes for which it was to be used;

  c. Was not adequately labeled; and,

  d. Did not conform to the promises or affirmations of fact made by Defendant Create A Cig Cordova.

  217. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant Create A Cig Cordova, the Subject Battery and the Subject E-Cigarette utilized by Plaintiff were not merchantable nor were they fit for the ordinary purposes for which such goods are used, which directly and proximately caused or contributed to cause Plaintiff David Bishop to sustain severe physical injuries as described above, conscious physical pain and emotional suffering, mental and psychological trauma, wage loss and impairment, and the reasonable expenses of necessary medical care and treatment in the past and future.

  218. Defendant Create A Cig Cordova's conduct was performed maliciously, intentionally, fraudulently and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from like conduct in the future.

  WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant Create A Cig Cordova for a reasonable sum of damages as will fairly and justly compensate him for his damages incurred, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT XII – VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### Defendant Create A Cig Cordova
### The Subject Battery and The Subject E-Cigarette

219.    Plaintiff adopts and re-alleges the foregoing paragraphs of his Complaint, as if fully set forth herein.

220.    The provisions of T.C.A. § 29-28-106 do not apply to claims brought pursuant to TCA §§ 47-18-101, *et seq.*, more commonly known as the Tennessee Consumer Protection Act.

221.    Mr. Bishop is, and was at all times relevant, a "consumer" as defined by TCA § 47-18-103(2).

222.    The Subject Battery and the Subject E-Cigarette are, and were at all times relevant, "goods" as defined by TCA § 47-18-103(7).

223.    Defendant Create A Cig Cordova, in violation of TCA § 47-18-104(b)(7), unfairly and/or deceptively represented that the Subject Battery and the Subject E-Cigarette were of a particular standard, quality, or grade when they were not.

224.    Moreover, Defendant Create A Cig Cordova failed, pursuant to TCA § 47-18-104(c)(5), to fairly and adequately disclose that the Subject Battery and Subject E-Cigarette were defective for the purposes represented.

225.    Specifically, Defendant Create A Cig Cordova falsely represented that the Subject Battery was a safer alternative to other powering systems, and that the Subject E-Cigarette was a safer alternative to traditional cigarettes, while failing to inform Plaintiff that the Subject Battery, when used in conjunction with the Subject E-Cigarette, could explode and cause significant personal injury despite being used in a reasonable and foreseeable manner.

226.    The aforementioned acts, omissions, representations, and misrepresentations of Defendant Create A Cig Cordova were committed willfully, knowingly and/or intentionally in

42

violation of TCA §§ 47-18-101, *et seq.*, more commonly known as the Tennessee Consumer Protection Act.

227.    As a direct and proximate result of the violations of the Tennessee Consumer Protection Act described herein by Defendant Create A Cig Cordova, Mr. Bishop was damaged in an amount to be proven at trial.

228.    Mr. Bishop is entitled to recover treble damages from Defendant Create A Cig Cordova pursuant to TCA § 47-18-109(a)(3).

229.    In addition to treble his damages, Mr. Bishop is entitled to recover attorney's fees from Defendant Create A Cig Cordova pursuant to TCA § 47-18-109(e)(1).

WHEREFORE, Plaintiff David Bishop prays that this Court enter judgment against Defendant Create A Cig Cordova for a reasonable sum of three times Mr. Bishop's damages as will fairly and justly compensate him for his damages incurred, for his costs incurred herein, for a reasonable attorney's fee, and for such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

David W. Hill (#019426)
NAHON, SAHAROVICH & TROTZ, PLC
488 South Mendenhall Road
Memphis, TN 38117
Phone: 901-683-2751
Fax: 901-746-1510
dhill@nstlaw.com

43

Jason Yasinsky (#029514)
NAHON, SAHAROVICH & TROTZ, PLC
488 South Mendenhall Road
Memphis, TN 38117
Phone: 901-683-2751
Fax: 901-746-1510
dhill@nstlaw.com

**ATTORNEYS FOR PLAINTIFF**