# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **DAVID BISHOP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **LG CHEM AMERICA, INC.** | ) |
| **VGOD, INC., NEW AGE** | ) Case No. 2:19-cv-2127-SHL-dkv |
| **INVESTMENTS OF CORDOVA** | ) |
| **LLC d/b/a CREATE A CIG** | ) |
| **CORDOVA, LA VAPOR, INC., and** | ) |
| **VAPOR BEAST LLC,** | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
### LG CHEM AMERICA, INC.'S MOTION TO DISMISS

Plaintiff David Bishop, by and through undersigned counsel, offers the following Response in Opposition to Defendant LG Chem America, Inc.'s Motion to Dismiss (Docket No. 65):

### *Introduction*

The subject battery that exploded in the face of Plaintiff David Bishop was manufactured, upon information and belief, by LG Chem Ltd., a Korean corporation. LG Chem, Ltd. is the parent company of Defendant LG Chem America, Inc. ("LG Chem America"). Further, upon information and belief, Defendant LG Chem America is the distributor and/or marketer of the products LG Chem Ltd. sells in America (including the subject battery). As such, it is believed that Defendant LG Chem America distributed and/or marketed the subject battery in such a way that was purposefully directed at the State of Tennessee, such that Defendant LG Chem America should reasonably anticipate being haled into court here.

If Plaintiff is able to prove all of the above, then this Court's exercise of personal specific

1

jurisdiction over Defendant LG Chem America is proper and LG Chem America's Motion to Dismiss should be denied.  In order to provide proof of all of the above, Plaintiff will need to issue jurisdictional discovery and may even need to depose the corporate representative(s) of LG Chem America.  As such, Plaintiff requests that the Court postpone ruling on Defendant's Motion to Dismiss until after the jurisdictional facts are known by issuing an Order allowing 90 days to conduct said jurisdictional discovery.

### *Argument and Authority*

The battery at issue in this case is an LG 18650 3,000 mAh 3.7 V battery.  (Pl.'s 2nd Am. Compl., ¶s 75-77).  In past cases, LG Chem, Ltd. has admitted that it manufactures 18650 lithium-ion batteries.  (*See* **Exhibit A**, Deposition of LG Chem, Ltd.'s Corporate Representative, Joon Young Shin, p. 55, ll. 11-15; *see also id.* at pp. 24-25, ll. 15-3).  Moreover, as to the subject battery specifically, Plaintiff represents here that, in addition to LG Chem, Ltd.'s admission, it has evidence that the battery at issue in this case was, in fact, manufactured by LG Chem, Ltd.

LG Chem America is connected to LG Chem, Ltd. via a marketing and distribution relationship.  LG Chem, Ltd.'s website lists "LG Chem America, Inc." as its sole "[m]arketing [s]ubsidiar[y]" in the "USA" as seen in this screenshot:



(*See* http://www.lgchem.com/global/lg-chem-company/global-network/us, attached hereto as **Exhibit B**). Nothing in the website limits the products that LG Chem America markets for its parent company. Plaintiff believes that after conducting jurisdictional discovery, Plaintiff will be able to present more definitive evidence of this relationship and prove that LG Chem America marketed all of LG Chem Ltd.'s products in the United States, including in Tennessee.

The only actual dispute is whether Defendant LG Chem America distributed and/or marketed the subject battery in such a way that was purposefully directed[1] at the State of

---

[1] *See S & S Screw Mach. Co. v. Cosa Corp.*, 647 F.Supp. 600, 607 (M.D.Tenn.1986) ("The modern approach to in personam jurisdiction . . . is based on the protection the due process clause provides to an individual's liberty interest in having 'fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign.' *Burger King*, 471 U.S. at 472 . . . .

3

Tennessee, such that Defendant LG Chem America should reasonably anticipate being haled into court here.[2] Plaintiff believes that jurisdictional discovery will provide proof of this fact.

Plaintiff already has the following evidence showing that the Court has personal jurisdiction over LG Chem America: (1) the subject battery, manufactured by LG Chem Ltd. was sold in Tennessee and injured a Tennessee citizen in Tennessee; (2) LG Chem America is a wholly owned subsidiary of LG Chem Ltd., which markets and distributes its parent's products; and (3) LG Chem America currently has designated a Tennessee Registered Agent for service of process in Tennessee. (*See* https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx, attached hereto as **Exhibit C**).

However, the fact that Plaintiff cannot yet point to additional evidence is not proof that more evidence does not exist. Plaintiff has not yet issued any discovery to Defendant LG Chem America (which is precisely why Plaintiff is asking for time to do so). In fact, Defendant LG Chem America was just served on June 18, 2019 (*See* **Exhibit D**, Proof of Service for LG Chem America).

Plaintiff believes that after conducting jurisdictional discovery there will be more proof that Defendant LG Chem America's activities regarding the lithium batteries at issue were directed at Tennessee. Regardless of the jurisdictional discovery, Plaintiff also wants to make the Court aware of the deficiencies in the arguments Defendant LG Chem America makes in its Motion. The Motion cites to *Bristol-Myers* claiming that "[w]hat is needed – and what is missing here [in order

---

In a specific jurisdiction case, a defendant has 'fair warning' if he has 'purposefully directed' his activities at residents of the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 801, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).").

[2] *See id.* ("Crucial to the inquiry is that the defendant's conduct and connection with the forum state be such that it should 'reasonably anticipate being haled into court there.' ") (citing *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567).

4

to establish personal specific jurisdiction] – is a connection between the forum and the specific claims at issue." (*See* Defendant's Motion, p. 7). In *Bristol-Myers*, this was clearly the case since:

> the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California . . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). Thus, even after all the evidence was in, personal jurisdiction was lacking in *Bristol-Myers*.

Here, though, the facts are that Plaintiff David Bishop *did* purchase the subject battery in Tennessee (*see* **Exhibit E**, subject battery Purchase Receipt), he *did* use the subject battery in Tennessee (as evidenced by the fact that he lived and worked in Tennessee), and he *was*, in fact, injured by the subject battery in Tennessee and treated in Tennessee. (*See* **Exhibit F**, excerpt of David Bishop's medical records). *Bristol-Myers* is simply not on point. Furthermore, in *Bristol-Myers* the plaintiffs were allowed to and had already conducted jurisdictional discovery and, after such discovery, could not meet their burden.

In light of these discrepancies, the holding in *Bristol-Myers* cuts in favor of jurisdiction instead of against it so long as Plaintiff can show that LG Chem America purposefully availed itself of the protection of Tennessee's laws or the benefits of doing business there. In any event, the holding in *Bristol-Myers* cuts in favor of at least granting jurisdictional discovery, which is what Plaintiff David Bishop requests from the Court.

The *Bristol-Myers* Court relied on *World–Wide Volkswagen Corp. v. Woodson*, 100 S.Ct. 559 (1980), which found "no personal jurisdiction in Oklahoma because the defendant 'carr[ied] on no activity whatsoever in Oklahoma' and dismissing 'the fortuitous circumstance that a single Audi automobile, sold [by defendants] in New York to New York residents, happened to suffer an accident while passing through Oklahoma' as an 'isolated occurrence'." *Bristol-Myers*, 137 S. Ct.

5

at 1782 (citing *World–Wide Volkswagen*, 100 S. Ct. at 566).

Plaintiff expects that the facts in this case will be different than those in *World-Wide Volkswagen*. In *World-Wide Volkswagen*, the Court acknowledged the following:

> if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

(*World–Wide Volkswagen*, 100 S. Ct. at 567). Given that the product in question here – the subject battery – undoubtedly was "the source of injury to its owner," all that is left to discover is whether it can be said that the injury "arises from the efforts of the . . . distributor to serve directly or indirectly, the market for its product in [Tennessee]." *Id.*

In fact, Tennessee's district courts have already held in favor of jurisdiction on facts similar to those that Plaintiff expects to prove:

> The Court thus rejects as inapplicable Gildemeister's reliance upon *World-Wide Volkswagen* for the proposition that its amenability to suit "does not travel with the chattel" it manufactures. Gildemeister is far more than a passive party whose only connection with the forum resulted from the unilateral activity of another . . . . Gildemeister's relationship to Cosa in the chain of distribution, coupled with its ongoing awareness of the sales by Cosa to S & S, clearly distinguishes it from the regional auto dealers in *World-Wide Volkswagen* . . . who were haled into an Oklahoma court due to the "fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer a accident while passing through Oklahoma." [citation omitted]. Gildemeister was in a position to devise, shape, and monitor its American distribution system by virtue of its exclusive agency contract with Cosa. Thus positioned, Gildemeister can be said to have purposefully included Tennessee in the market it chose to expand and exploit for its products.

*S & S Screw*, 647 F.Supp. at 609. The *S & S Screw* Court further stated that:

> even if Gildemeister had lacked awareness of, and direct participation in, Cosa's series of sales to S & S, the company's intention to exploit the American market, as executed by the agency contract with Cosa, suffices by itself to support an alternative ground for the exercise here of personal jurisdiction. Speaking in dictum not of the regional dealers but of the German manufacturer Audi and its national

6

importer, Volkswagen of America, Inc., the *World-Wide Volkswagen* court said:

> "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* (quoting *World-Wide Volkswagen*).

### ***Defendant's Arguments Highlight the Need for More Information***

Given that backdrop, Defendant's own arguments in its Motion to Dismiss make clear that evidence of an intention to exploit Tennessee's market is likely discoverable. In other words, by looking not only at what Defendant says in its Motion and Affidavit, but also at what it *does not* say, and comparing that to what a former party, LG Electronics, USA, Inc., said in its Affidavit supporting its own Motion to Dismiss, it becomes apparent that Plaintiff's request for jurisdictional discovery here will be worthwhile.

Defendant LG Chem America knows whether it directs any distribution or advertisements to the residents of Tennessee, either directly or indirectly. Put another way, Defendant LG Chem America has information that Plaintiff does not. Defendant LG Chem also does not want to be involved in this lawsuit. Thus, it can be inferred from these two things that Defendant LG Chem America would present any and all favorable evidence in its Motion and Affidavit, if it had it. Conversely, if Defendant LG Chem America did not present evidence in favor of dismissal in its Motion and Affidavit, this Court can be confident that such evidence does not exist.

With this in mind, what Defendant LG Chem America did not argue is important. In

paragraph 4 of its Affidavit, LG Chem America says that it "sells and distributes various petrochemical materials and products . . . ." What the Affidavit does not say though is that LG Chem America did not market, sell, or distribute the subject battery. If this were true, one would expect LG Chem to have said as much. In fact, before Plaintiff previously voluntarily dismissed former party LG Electronics USA, Inc. ("LG Electronics"), LG Electronics filed a Motion with an Affidavit in support stating exactly that. *See* **Exhibit G**, Affidavit of LG Electronics' Corporate Representative, ¶ 11 (attesting that LG Electronics "has never promoted, marketed . . . supplied, imported, sold, delivered or distributed ***any*** 18650 lithium-ion battery cells . . . .") (emphasis added). The fact that LG Chem America did not use the same strategy (which it knew had been successful in the past) is explained only by the fact that the same is not true for LG Chem America.

Similarly, in paragraph 5 of its Affidavit, LG Chem America says that its "sales in Tennessee are exclusively limited to petrochemical materials and products." However, what its Affidavit does not say is that its sales to distributors outside of Tennessee are also exclusively limited to petrochemical materials and products. Without this being true, LG Chem America is still vulnerable to the possibility that it sold the subject battery outside of Tennessee with the intention and knowledge that the battery would eventually be sold to a resident of Tennessee.

Paragraph 7 of LG Chem America's Affidavit states that it "has never had a registered agent in Tennessee." However, this is patently false. (*See* **Exhibit C**). LG Chem America has had a registered agent in Tennessee since December 10, 2013. The presence of a registered agent in Tennessee also arguably makes paragraph 9 of its Affidavit inaccurate, where LG Chem America claims to have never "maintained a mailing address . . . in Tennessee." Such inaccuracies lead to questions about the veracity of the other allegations contained in the Affidavit.

Paragraph 11 of LG Chem America's Affidavit states, quite specifically, that it "does not and has never designed, manufactured, distributed, advertised, or sold any lithium-ion power cell ***for use by individual customers as replaceable, rechargeable batteries in electronic cigarette devices***" (emphasis added).  Again, it is useful to compare this to the Affidavit of LG Electronics, which was properly dismissed from this case in the past.  *See* **Exhibit G**, Affidavit of LG Electronics' Corporate Representative, ¶ 11 (attesting that LG Electronics "has never promoted, marketed . . . supplied, imported, sold, delivered or distributed ***any*** 18650 lithium-ion battery cells . . . .") (emphasis added).  The difference between the two statements drives the difference in outcome argued for by the Plaintiff herein: LG Electronics was able to say that it wasn't involved with the subject battery whereas LG Chem America must resort to saying merely that it didn't manufacture the subject battery *to be used by individual customers as replaceable, recharegeable e-cigarette batteries*.

Given the specificity of this statement, the things that it fails to say are, indeed, numerous; however, most notably among them is the fact that LG Chem America's Affidavit does not say that it did not distribute or advertise the subject battery.

Further, Paragraph 14 of the Affidavit states that LG Chem America never authorized anybody to sell lithium ion power cells "for use by individual consumers as replaceable, rechargeable batteries in e-cigarette devices."  Once again though, what it does not say is that LG Chem America never authorized anybody to sell the subject battery, which is the relevant question.

Last, but not least, paragraph 15 of LG Chem America's Affidavit states that LG Chem America has not packaged, labeled, warranted, assembled, promoted, marketed, supplied, imported, sold, delivered, or distributed any 18650 batteries "in or to the State of Tennessee."

9

However, as may be deduced by now, what this does not say is that LG Chem America never did any of those things outside of Tennessee with the intention that the batteries would or could ultimately be sold to Tennessee residents.

### *Conclusion*

As can be seen, it is possible, and Plaintiff believes likely, that this Court has personal jurisdiction over Defendant LG Chem America. Nothing in the Defendant's Motion or Affidavit affirmatively proves this Court's lack of personal jurisdiction. At most, the statements made therein highlight the need for more jurisdictional information, which is precisely why Plaintiff is requesting the same.

**WHEREFORE,** Plaintiff requests that this Court enter an Order: (1) postponing a decision on Defendant LG Chem America, Inc.'s Motion to Dismiss until after proper jurisdictional discovery has been had, (2) allowing Plaintiff 90 days to conduct such discovery, and (3) for such other and further relief as the Court may deem proper under the premises.

RESPECTFULLY SUBMITTED,

*/s/ David A. Brose*

David Brose (MO# 56244)
Connor Curran (MO# 69483)
LANGDON & EMISON LLC
911 Main Street
P.O. Box 220
Lexington, Missouri 64067
Phone: 660-259-6175
Fax: 660-259-4571

David W. Hill (#019426)
Jason Yasinksy (#029514)
NAHON, SAHAROVICH & TROTZ, PLC
488 South Mendenhall Road
Memphis, Tennessee 38117
Phone: 901-683-2751

Fax: 901-746-1510
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 6, 2019, a true and correct copy of the foregoing has been filed with the Clerk of the United States District Court for the Western District of Tennessee using the CM/ECF system. The Court's CM/ECF system will send an email notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF system.

Sean W. Martin
Michael Petherick
CARR ALLISON
651 E. 4th Street, Suite 100
Chattanooga, TN 37403
Phone: 423-648-9832
Fax: 423-648-9869

Albert G. McLean
Spicer, Rudstrom, PLLC
119 S. Main St.
Suite 700
Memphis, TN 38103
Phone: 901-522-2324
Fax: 901-523-0213

*/s/ David Brose*